FILED
2007 May-23 PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICK J. JACKSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-06-CO-04805-S |
| | ] | |
| RITE WAY SERVICES, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

The Court has for consideration Defendant's motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and to stay this action pending the conclusion of arbitration. (Doc. 3.) The motion has been briefed by the parties and is ripe for review.

I.   Procedural Background.

On May 17, 2006, Patrick J. Jackson ("Jackson") filed a complaint against Rite Way Services, Inc. ("Rite Way"), seeking damages based on alleged violations of his Employment Agreement ("Agreement") with Rite Way. Plaintiff filed his action in the State Court of DeKalb County, Georgia. Defendant removed the case to the U. S. District Court for the Northern

District of Georgia, Atlanta Division, based on diversity jurisdiction, and subsequently filed a motion to dismiss for improper venue or, in the alternative, to compel arbitration.  The U.S. District Court for the Northern District of Georgia construed the motion to dismiss as a motion to transfer venue based on the forum-selection clause in the Agreement.  The Agreement stated that any judicial proceedings relating to the Agreement should take place "at all times in the County of Jefferson, State of Alabama."  (Doc. 3, Ex. 2-A ¶ 12.1.)  The Northern District of Georgia, therefore, transferred the case to this Court, and Defendant renewed its motion to compel arbitration.

II.   Facts.

Mr. Jackson was hired by Rite Way on May 5, 2003, to serve as the Division Manager of Rite Way's Birmingham Division, which includes Tuscaloosa, Birmingham, Anniston, and Gadsden, Alabama.  (Doc. 3, Ex. 2 ¶ 3.)  The parties entered into an Employment Agreement on May 6, 2003.  (Doc. 3, Ex. 2-A.)  The Agreement provides that the parties agree to "waive trial by jury of any claim, counterclaim, or third-party claim, including all claims of injury or damages, brought by either party against the other

arising out of or in any way connected with this Agreement and the relationship which arises herefrom." (Doc. 3, Ex. 2-A ¶ 7.1.)

The Agreement also outlines the process for resolution of a dispute. (Doc. 3, Ex. 2-A.) First, all "parties shall attempt in good faith to resolve any dispute . . . promptly by negotiations." (*Id*. ¶ 7.2.) Written notice of a dispute is to be provided to the opposing party, and if the matter has not been resolved within sixty days of the notice or the parties do not meet to negotiate within the twenty-day time frame, either party may initiate mediation. (*Id*.)

The Agreement further states that "[i]f any dispute has not been resolved by negotiation . . . , the parties shall endeavor to resolve the dispute by mediation." (*Id*. ¶ 7.3.) The subsequent paragraph entitled "Arbitration" reads as follows:

> Any dispute that has not been resolved by mediation, as provided in Section hereinabove [sic], within sixty (60) days of the initiation of such procedure, shall be finally settled by arbitration conducted expeditiously . . . . The award shall be based upon applicable law and judicial precedent and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. . . . Notwithstanding the foregoing[,] if one party has requested the other party to participate in a non-binding dispute resolution procedure under Sections or above

[sic] and the other party has failed to participate therein, the other party may initiate arbitration before expiration of the above time periods.

(*Id.* ¶ 7.4.)

In his lawsuit, Plaintiff alleges that he was wrongfully terminated on May 19, 2004, and he seeks back wages, benefits, future wages, and unpaid bonuses.

III.   Analysis.

Plaintiff argues that this dispute is not subject to binding arbitration for two reasons. (Doc. 5 at 1.) First, Mr. Jackson believes that the case does not qualify for arbitration under the FAA because the defendant presented no evidence that the effects of the contract on interstate commerce are substantial. (*Id.*) Second, Mr. Jackson argues that the Defendant's request for arbitration is premature and improper since the parties have not attempted to proceed with negotiation or mediation before the arbitration request. (*Id.*)

Defendant Rite Way contends that the Agreement is a valid and binding arbitration agreement, and a sufficient nexus exists between the subject of Plaintiff's claims and interstate commerce such that this action

falls within the ambit of the FAA.  (Doc. 6 at 4.)  Furthermore, Defendant requests that the Court order arbitration and either dismiss the case or stay further proceedings pending completion of arbitration and confirmation of the arbitrator's award.  (Doc. 3 at 5.)

    A.    Interstate Commerce.

The FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction . . . shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).  While state law governs the question of whether an agreement to arbitrate exists, federal law generally governs "the interpretation and enforcement of a valid arbitration agreement."  *Eassa Props. v. Shearson Lehman Bros., Inc.*, 851 F.2d 1301, 1305 n.7 (11th Cir. 1988). Plaintiff cites paragraph 12.2 of the Employment Agreement, which states that the parties agree that Alabama law governs the "validity, construction, interpretation, and effect" of the Agreement and its provisions (Doc. 3, Ex. 2-A), and argues that the Alabama Supreme Court requires a moving party

to produce some evidence showing that the effects of a contract on interstate commerce are substantial. (Doc. 5 at 3 (citing *Ex parte Flora Ephriam v. Tenent Healthcare Corp.*, 806 So. 2d 352 (Ala. 2001).) Plaintiff does not dispute that he entered into a valid agreement containing a binding arbitration clause, but he argues that Defendant has not provided any evidence, as purportedly required by Alabama law, showing the effect of the Agreement on interstate commerce was substantial.

The "FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). It is important to note, however, that the FAA pre-empts state laws that make arbitration agreements unenforceable. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272 (1995). Therefore, if Alabama law in this instance conflicted with federal law and prevented the enforcement of a valid arbitration clause that was clearly agreed upon by both parties, the FAA prevails. *Id.*; *see also Woodmen of the World Life Ins. Soc'y v. White*, 35 F. Supp. 2d 1349 (M.D. Ala. 1999) (concluding that a dispute was subject to arbitration under the FAA despite a choice-of-law provision mandating the application of Alabama law) (cited

in *Jim Walter Homes, Inc. v. Saxton*, 880 So. 2d 428, 433 (Ala. 2003)). There is, however, no such conflict in this case.

Contrary to Plaintiff's argument, the U.S. Supreme Court has expressly held that it is not required that every contractual transaction substantially affect interstate commerce before the FAA applies. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003). And, the U.S. Supreme Court's decision has since been cited and applied by the Alabama Supreme Court. *Service Corp. Int'l v. Fulmer*, 883 So. 2d 621 (Ala. 2003); *Allied Williams Co., Inc., v. Davis*, 901 So. 2d 696, 700 (Ala. 2004). Alabama and federal courts now agree that the FAA can be triggered "'in individual cases without showing any specific effect on interstate commerce[,]' if in the aggregate[,] the economic activity in question would represent a general practice . . . subject to federal control." *May v. Buchanan*, 877 So. 2d 613, 616 (Ala. Civ. App. 2003) (quoting *Citizens Bank*, 539 U.S. at 56-57). "Only that general practice need bear on interstate commerce in a substantial way." *Citizens Bank*, 539 U.S. at 57.

Furthermore, an individual economic or commercial transaction, even one that is "purely intrastate," is within the reach of the FAA "if the

'"general practice" those transactions represent' has, in the aggregate, a substantial effect on interstate commerce." *Service Corp. Int'l v. Fulmer*, 883 So. 2d 621, 627 (Ala. 2003) (quoting *Citizens Bank*, 539 U.S. at 58). As stated by the Alabama Supreme Court, with such a broad standard, "[i]t would be difficult indeed to give an example of an economic or commercial activity that one could, with any confidence, declare beyond the reach of Congress's power under the Commercial Clause, and by extension, under the FAA. . . . [A] trial court evaluating a contract connected to some economic or commercial activity would rarely, if ever, refuse to compel arbitration on the ground that the transactions lacked 'involvement' in interstate commerce." *Id.* at 629.

Defendant Rite Way's business consists of providing janitorial services for businesses in several southeastern states, including Alabama, Georgia, Louisiana, Mississippi, Florida, Tennessee, North Carolina, South Carolina, and Kentucky. (Doc. 3, Ex. 2 ¶ 2.) The company, and Mr. Jackson while he was employed as a Division Manager for Rite Way, utilizes equipment from out-of-state vendors and suppliers. (*Id.*) Furthermore, the Agreement in question is a contract between an Alabama corporation and a Georgia

resident. Plaintiff's argument that the Agreement itself does not affect interstate commerce is flawed. Regardless of the fact that the Plaintiff's position as Division Manager for Rite Way included a territory strictly in Alabama, the general practice of the Agreement, in the aggregate, clearly bears on interstate commerce in a substantial way. Therefore, the FAA governs the arbitration provisions contained therein.

B.     Prerequisites to Arbitration.

Plaintiff also contends that Rite Way's Motion to Compel Arbitration is premature and improper since the parties have not engaged in negotiation or mediation since this dispute was initiated on May 17, 2006.

Courts must enforce arbitration agreements according to their terms, and the parties to such agreements "are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). The Agreement in this case states that if the parties fail to meet (and negotiate) within twenty days, "either party may initiate the mediation of the controversy or claim as provided in the Section below." (Doc. 3, Ex. 2-A ¶ 7.2.) The subsequent section states: "If any dispute has not been resolved

by negotiation as provided in the Section above, the parties shall endeavor to resolve the dispute by mediation." (*Id*. ¶ 7.3.) Defendant, perhaps relying on the word "endeavor," argues that the latter clause does not mandate mediation, but in light of the word "shall," Defendant's position is baffling. Moreover, the provision discussing arbitration clearly states that "[a]ny dispute that has not been resolved by mediation, as provided in Section hereinabove [sic], within sixty (60) days of the initiation of such procedure, shall be finally settled by arbitration . . . ." (*Id*. ¶ 7.4.) Thus, the plain language of the Agreement makes mediation a prerequisite for arbitration.

The Court has noted that the Agreement also provides as follows: "Notwithstanding the foregoing[,] if one party has requested the other party to participate in a non-binding dispute resolution procedure under Sections or above [sic] and the other party has failed to participate therein, the other party may initiate arbitration before the expiration of the above time periods." (*Id*.) Although Defendant has argued that mediation would be "fruitless and a waste of time and expense for all involved" (Doc. 6 at 6),

there is no evidence before this Court that any party has made a request for mediation and the other party thereafter "failed to participate therein."

IV.   Conclusion.

For the foregoing reasons, the Court finds the Employment Agreement is a contract evidencing a transaction involving commerce and the FAA governs the arbitration provisions contained therein.  However, the parties have contracted to "endeavor to resolve" their dispute by mediation before participating in arbitration.  Therefore, Defendant's motion to compel arbitration will be granted in part and denied in part.  A separate order will be entered.

Done this <u>23rd</u> day of <u>May 2007</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153
